United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY G. JUNKER,<br><br>        Plaintiff,<br><br>    v.<br><br>HDC CORPORATION,<br><br>        Defendant.<br>_____/ | No. C-07-05094 JCS<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [Docket No. 20]** |

## I.   INTRODUCTION

Plaintiff, Larry G. Junker ("Junker"), filed a Complaint seeking relief from Defendant HDC Corporation ("HDC") for its use of United States Design Patent No. D450,839, entitled "Handle for Introducer Sheath" (the "'839 Patent"). Defendant did not answer or otherwise respond to the Complaint, and the Clerk entered default pursuant to Fed.R.Civ.P. 55(a) on January 22, 2008. Plaintiff now brings a motion requesting that the Court enter default judgment in his favor and award lost profits, prejudgment interest, and attorneys' fees (the "Motion"). A hearing on the Motion was held on June 20, 2008, at 9:30 a.m. Plaintiff filed supplemental materials in support of the Motion on July 9, 2008. For the reasons stated below, it is recommended that the Motion be GRANTED and that the Court award $10,519.80 in damages and $2,604.70 in prejudgment interest.

## II.   BACKGROUND

The Complaint in this action was filed on October 3, 2007. In the Complaint, Junker alleges that "HDC has willfully and knowingly, made, used, sold and/or offered for sale devices embodying the patented invention that constitute infringement [of the '839 patent] . . . in violation of 35 U.S.C § 271." (Compl. ¶ 5.) Larry Junker is listed as the inventor on the '839 patent. Supplemental Declaration of

James D. Petruzzi in Support of Request for Default Judgment ("Petruzzi Supp. Decl."), Ex. D ('839 patent). Plaintiff's counsel states that the '839 patent "covers the ornamental design of a pull-apart sheath introducer used in facilitating the insertion of catheters and other ports into the body." Petruzzi Supp. Decl., ¶ 2. Junker asserts that HDC sold Introducer Kits that included the Introducer Sheath patented by Junker. Motion at 2; *see also* Petruzzi Supp. Decl., ¶ 3-4, Exs. E & F (evidence that in 2002, HDC sold peel-apart sheaths separately or as part of Introducer Kit). According to Junker, "HDC stopped selling the infringing Introduc[er] Kits around December 2003, at or about the time it was advised of an injunction entered in a previous suit against the manufacturer, Galt Medical." Declaration of James D. Petruzzi in Support of Request for Default Judgment ("Petruzzi Decl."), ¶ 2, April 4, 2008. In the Complaint, Junker sought an award of: 1) damages for infringement; 2) attorneys' fees; 3) interest and costs of the suit; and 4) any other relief that the Court deemed proper and just. (Compl. Prayer.)

Although HDC did not answer or otherwise appear, the President of HDC, Tim Duvall, called Junker's counsel a few days after the Complaint was filed to inform him that HDC had stopped selling the infringing Introducer Kits. Petruzzi Decl. ¶ 2. On October 10, 2003, Duvall followed up on his telephone conversation with an e-mail to Junker providing information about the total number of Tear Away Sheath Introducer Kits sold by HDC. Petruzzi Decl. ¶ 3. In the e-mail, Duvall stated that HDC used 1,182 of the Introducers in its Introducer Kits that were sold with its Chemo Ports and Chemo Cath products. Petruzzi Decl., Ex. A. According to Duvall, the kit as a whole cost $20.00 and had a profit margin of 44.5%. *Id.* The Tear Away alone cost $5.15 and had a per unit profit margin associated with it of $4.12. *Id.*

In the Motion, Junker seeks entry of default judgment and an award of damages for HDC's infringement of the '839 patent, pursuant to 28 U.S.C. § 271. With respect to damages, Junker seeks: 1) HDC's full profits arising from its sales of the Introducer Kits containing the infringing product under 35 U.S.C. § 289; 2) attorneys' fees under 35 U.S.C. § 285; and 3) prejudgment interest. Junker calculates HDC's profits by taking the total number of Introducer Kits sold by HDC (1,182) and multiplying it by the price charged by the company per kit ($20.00), obtaining a total of $23,640.00 in revenue on Introducer Kits containing the infringing product. Motion at 2. He then

multiplies HDC's revenue by its 44.5% profit margin on the Introducer Kits to calculate HDC's profits, obtaining an amount of $10,529.80. *Id.* In support of his request for attorneys' fees, Junker provides a declaration documenting the number of hours he worked on this action (11.75) and his hourly fee ($300.00-$325.00), giving rise to fees in the amount of $3,643.75. Petruzzi Decl. ¶ 4. Finally, Junker provides the prime interest rates for January 2004, 2005, 2006, and 2007, which were 4.00%, 5.25%, 7.26%, and 8.25%, respectively, which he uses to calculate prejudgment interest. Petruzzi Decl. ¶ 5. He makes a simple interest calculation, multiplying his calculation of HDC's profits by each of the interests rates and adding them up. Petruzzi Decl. ¶ 6. Using this approach, Junker's total requested prejudgment interest is $5,853.26. *Id.*

### III. ANALYSIS

#### A. Legal Standard Regarding Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415-16 (9th Cir. 1956) (affirming district court's denial of default judgment). The Court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d). On the other

3

hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id*.

### B. Eitel Factors

#### 1. Excusable Neglect

There is no indication that HDC's failure to answer or appear was the result of excusable neglect. The Complaint in this action was served on HDC. There has been no attempt on HDC's part to respond to Junker's allegations. Therefore, the Court concludes that HDC's failure to respond was not due to excusable neglect.

#### 2. Possible Prejudice to Plaintiff

Plaintiff would suffer prejudice if default judgment is not entered because Plaintiff would be without another course of recovery. Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor. *See Phillip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

#### 3. Allegations and Substantive Merits of Claim

Plaintiff alleges that HDC infringed upon his '839 patent. He has also provided a declaration to that effect. HDC has failed to respond and has not presented any defense, meritorious or otherwise. Under these circumstances, entry of default judgment is justified without further proof of Junker's claim of infringement. *See Honda Power Equip. Mfg. Co. v. Woodhouse*, 219 F.R.D. 2, 6 (D.D.C. 2003) (entering default judgment on declaratory judgment claim of patent invalidity based on allegations in complaint without taking further evidence where defendant wilfully defaulted and plaintiff was prejudiced by defendant's failure to respond).

#### 4. Sum of Money at Stake

Pursuant to the fourth *Eitel* factor, the Court must "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d. 1172, 1176 (C.D. Cal. 2002). Because the amount of money at stake is not disproportionate to the seriousness of Defendant's conduct, this factor favors entry of default judgment.

### 5. Conclusion

Based on consideration of the *Eitel* factors, the Court concludes that default judgment should be entered against HDC.

## C. Remedy

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes*, 559 F.2d at 660. Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not differ in kind from, or exceed in amount," that prayed for in the complaint. Fed. R. Civ. P. 54(c). The Court may hold such hearings as it deems necessary to determine the amount of damages, to establish the truth of any averment by evidence, or to make an investigation of any matter necessary in order to enable the Court to enter judgment or to carry it into effect. Fed. R. Civ. P. 55(b).

### 1. Damages

The general remedy for patent infringement is set forth in 35 U.S.C. § 284, which states that, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." Plaintiff, however, seeks to recover the profits made by HDC on the infringing product, pursuant to 35 U.S.C. § 289. Section 289 provides an alternative remedy to section 284, for infringement of design patents.[1] It holds an infringing party liable "to the extent of his total profit, but not less than $250." It has the purpose of placing the "patentee in the shoes of the infringer." *Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166, 1171 (6th Cir. 1980). In establishing the infringer's profits under section 289, a patent holder is not required to demonstrate that the profits are attributable to the ornamental qualities of the item in the design patent. *Bergstrom v. Sears, Roebuck and Co.*, 496 F. Supp. 476, 495 (D.C. Minn. 1980). Rather, a patent holder is entitled to the entire profit obtained by the infringer as a result of sales of the item with the infringing design. *Id.*

---

[1] "Design patents, by their very nature, protect only non-functional, ornamental features and configurations." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 6:11 (4th ed. 2008).

Defendant calculated the profits from the sales of the infringing items that were sold as part of the Introducer kits. There is evidence in the record that HDC's profits from the sales of the infringing item (without including profits from the other items in the Introducer Kits) amounted to $4,869.84. Petruzzi Decl., Ex. A. In particular, HDC President Tim Duvall stated that it sold 1,182 of the infringing items as part of the Introducer kits, and he attributes a price of $5.15 to each infringing item, and states that the profit on each was $4.12. There is also evidence that HDC's profits from sales of the Introducer Kits as a whole amounted to $10,519.80, that is, 1,182 kits sold at a price of $20.00 each, with a profit margin of 44.5%. *Id*. Finally, HDC's total revenues from sales of the Introducer Kit were $23,640.00. *Id*. In the Motion, Junker requests an award equal to HDC's total revenues on the Introducer Kit, asserting that the profit margin figure is unsubstantiated and, therefore, should be disregarded. In the alternative, Junker argues that he is entitled to at least the profits that HDC brought in from sales of the Introducer Kits. The Court rejects the first argument, but finds that Junker is entitled to an award equal to HDC's profits on the Introducer Kits.

Plaintiff argues that the profit margin figure provided by HDC is "unsubstantiated" and therefore should be disregarded. Motion at 2. However, Plaintiff fails to offer any reason for differentiating between reliability of the sales figures provided by Duvall and the profit margins provided in the same e-mail. In the absence of any evidence suggesting that the profit margins are less reliable than the sales figures, and to the extent Junker relies on the sales figures, the Court also adopts the figures provided by Duvall as to HDC's profit margins.

The more difficult question is whether Junker is entitled to HDC's profits only on sales of the introducer sheath (even though they were sold as part of a kit) or to profits on the Introducer Kits as a whole. Plaintiff asserts that he is entitled to the latter under the entire market value rule. That rule has been applied in determining the extent of a *plaintiff's* lost profits under 35 U.S.C. § 284. *See Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987). Under the "entire market rule," the plaintiff can prove the extent of its lost profits on "a showing that the patentee could reasonably anticipate the sales of the unpatented components together with the patented components." *Id.* The court in *Leesona Corp. v. U.S.* elaborates:

6

> Under the entire market rule, it is not the physical joinder or separation of the contested items that determines their inclusion in or exclusion from the compensation base, so much as their financial and marketing dependence on the patented item under standard marketing procedures for the goods in question.

*Leesona Corp. v. U.S.*, 599 F.2d 958, 974 (Ct. Cl. 1979). In *Leesona*, the court awarded the patent holder a royalty based on the value of the patent holder's re-chargeable battery as well as other, non-infringing parts. *See Leesona,* 599 F.2d at 975. The court did this because the non-infringing parts were "designed to operate in conjunction with this special battery." *Id.*

Here, Plaintiff has presented evidence that the Introducer Kit is "useless without the introducer sheath which includes the patented handle design as it is the mechanism which permits introduction of the catheter and then removal of the introducer by peeling back the sheath and pulling it apart at the handle." Petruzzi Supp. Decl., ¶ 4. The Court concludes that the entire market value rule is applicable to the calculation of a *defendant's* lost profits under section 289. In addition, Plaintiff has made the requisite showing under this rule. Therefore, the Court concludes that Plaintiff is entitled to the profit that HDC received from sales of the Introducer Kits containing the infringing item, that is, $10,519.80.

### 2. Attorneys' Fees

Plaintiff seeks attorneys' fees in this action under 35 U.S.C. § 285. Section 285 allows a court to grant a patent holder attorneys' fees in "exceptional cases." 35 U.S.C. § 285. The court must first determine that a case is "exceptional" and then it may exercise its discretion to award fees to the prevailing party. *Informatica Corp. v. Bus. Objects Data Integration*, 489 F. Supp. 2d. 1075, 1085 (N.D. Cal. 2007). The rule is intended to discourage "infringement by penalizing the infringer" and to prevent "'gross injustice' when the accused infringer has litigated in bad faith." *Id.* (quoting *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989)).

A case may be found exceptional either on the basis that the underlying infringement was willful or on the basis of "litigation misconduct and unprofessional behavior." *U.S. Philips Corp. v. KXD Tech., Inc.,* 2007 WL 4984150, at *4 (C.D. Cal. September 7, 2007) (citing *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996)). Here, the Court finds that Plaintiff has not demonstrated that the case is exceptional on either ground.

First, there is no evidence that the underlying infringement was wilful. Willfulness is determined by the totality of the circumstances and must be proven by clear and convincing evidence. *Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990). In determining whether an infringement was willful, a court may consider whether the infringer knew of the patent before the suit was filed and continued to manufacture and sell the product over the course of litigation. *Advanced Cardiovascular Sys., Inc. v. Sci-Med Life Sys.*, 63 F. Supp. 2d 1064, 1081 (N.D. Cal. 1999). Although Plaintiff alleged in the complaint that Defendant's infringement was done "willfully and knowingly," the evidence presented in support of the Motion indicates that HDC discontinued its infringement upon learning of the suit and cooperated with the Plaintiff by providing sales numbers, supporting the conclusion that the infringement was not, in fact, wilful. *See* Petruzzi Decl., Ex. A. Accordingly, the Court concludes that an award of attorneys' fees on this basis would not be appropriate.

Second, the Court concludes that Defendant's default in this case does not rise to the level of the type of misconduct that justifies an award of attorneys' fees. *See, e.g., Rhino Assoc., L.P. v. Berg. Mfg. and Sales Corp.*, 531 F. Supp. 2d 653, 659 (M.D. Pa. 2007) (entering default judgement for Plaintiff but finding that patent infringement was not "exceptional."); *Telequip Corp. v. The Change Exch.*, No. 5:01-CV-1748, 2007 WL 655734, at *2 (N.D.N.Y. 2007) (entering default judgment and holding that the case was not exceptional, noting that "neither willful infringement nor defaults are unusual in patent infringement cases."). *But cf. Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 584 (7th Cir. 1981) (holding that case was exceptional under § 285 and awarding attorneys fees to prevailing defendant where the plaintiff initiated the suit with "unconfirmed data, refused to produce test reports which would substantiate the charges, and concealed a suspicion, later to be proven as fact, that the test data was tainted and unreliable"). *Id.* at 584. Here, the available evidence suggests that the Defendant's lack of a response to the Plaintiff's Complaint was likely due to Duvall's belief that the small amount of money at stake in this case did not warrant the costs of hiring counsel. *See* Petruzzi Decl., Ex. A. While the Court does not condone such conduct, it also does not find it to be "exceptional."

It is recommended that Plaintiff's request for attorneys' fees be denied.

8

### 3. Prejudgment Interest

Courts routinely award prejudgment interest in design patent infringement actions. *See, e.g., Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1292 (Fed. Cir. 2002) (awarding prejudgment interest on damages awarded for infringement of design patent); *Rocket Jewelry v. Quality Intern. Packing, Ltd.*, 250 F. Supp. 2d 333, 339 (S.D.N.Y. 2003) (same), *vacated, in part, on other grounds,* 90 Fed. Appx. 543 (Fed. Cir. 2004). The purpose of awarding prejudgment interest is to fully compensate the patent holder for the infringement. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653 (1983). The Court is afforded wide latitude in the selection of interest rates in order to ensure this purpose is met. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (citing *Gyro-mat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556-57 (Fed. Cir. 1984)). The court may use the prime rate, the prime rate plus a percentage, the U.S. Treasury rate, state statutory rate, corporate bond rate, or whatever rate the court deems appropriate under the circumstances. *Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.*, 913 F. Supp. 1256, 1280 (N.D. Iowa 1996). Prejudgment interest is ordinarily awarded from the date of the infringement to the date of judgment. *Informatica*, 489 F. Supp. 2d at 1086-87.

Plaintiff requests that the Court use a simple, annual prime rate taken from January 2004, 2005, 2006 and 2007. Petruzzi Decl. ¶ 5. The rates for those years are 4.00%, 5.25%, 7.25%, and 8.25%, respectively. *Id.* Plaintiff calculates his total interest award from the time HDC discontinued its sales of the infringing Introducer Kit in December 2003, which is the latest date which the infringement could have occurred, through December 2007. Petruzzi Decl. ¶ 2. The yearly interest rates provided by the Plaintiff for 2004-2007 are correct. Furthermore, the Court finds that the use of the annual prime rate is reasonable. *See, e.g. Uniroyal*, 939 F.2d at 1545 (awarding Plaintiff prejudgment interest at prime rate.); *Lam Inc. v. John-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) (same); *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720-21 (D.Del. 1993) (same). Using these rates to obtain prejudgment interest on $10,519.80, the Court finds that Plaintiff is entitled to $2,604.70 for the period January 1, 2004, through December 31,

2007.[2]

## IV. CONCLUSION

For the reasons stated above, it is recommended that the Motion be GRANTED. Plaintiff should be awarded $10,519.80 in damages and $2,604.70 in prejudgment interest, that is, $13,124.50.

Dated: July 28, 2008

JOSEPH C. SPERO
United States Magistrate Judge

---

[2] Plaintiff does not request prejudgment interest for 2008 and has not provided evidence of the prime rate for 2008.